# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                      No. CR 02-0056 JC

ROBERT D. FRODSHAM,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Indictment, filed September 8, 2004 (*Doc. 13*). The Court, having considered the Motion, the memoranda submitted by the parties, all relevant authority, and having held a hearing in this matter on December 9, 2004, finds the Motion well-taken and it is, therefore, granted.

## I.    Background

The following facts, except as otherwise noted, are undisputed. Defendant brings this Motion alleging a violation of the Interstate Agreement on Detainers Act (IADA), 18 U.S.C. App. § 2. On August 2, 2002, Defendant was sentenced in New Mexico State District Court, Second Judicial District, to a prison term of seven (7) years in the custody of the State Department of Corrections. On December 18, 2002, Defendant was serving that sentence at the Minimum Restrict Unit in the Los Lunas Penitentiary compound when he was served with a detainer ("Detainer I") on the basis of the United States District Court having issued an arrest warrant charging Defendant with violation of 18

U.S.C. § 922(g)(1) (Felon in Possession of a Weapon) and 26 U.S.C. 5861(d) (Possession of a Weapon Made from a Shotgun, not Registered in the NFR & TR).  Notwithstanding Defendant's obvious status as a sentenced prisoner, for he was serving a term in a facility that by its nature houses only convicted inmates, Detainer I was styled "Detainer Against Unsentenced Prisoner."  Mot., Ex. B.  More importantly, Detainer I stated in pertinent part, "[t]he notice and speedy trial requirements of the Interstate Agreement on Detainers Act do NOT apply to this Detainer because the subject is not currently serving a sentence of imprisonment at the time the Detainer is lodged.  IF THIS SUBJECT IS SENTENCED WHILE THIS DETAINER IS IN EFFECT, PLEASE NOTIFY THIS OFFICE AT ONCE."  *Id.*

Because Detainer I was erroneously lodged against an "unsentenced prisoner," it did not contain a  USM-17 form for Defendant to return requesting a speedy trial on the federal charges pursuant to the IADA.  As a result of Detainer I, Defendant was transferred from the minimum security penitentiary in Los Lunas to the medium security correctional facility in Lea County and was adversely affected by the significantly fewer program options available at the Lea County facility. Mot., Ex. C.  Defendant alerted prison staff at both facilities to the error several times, but it went uncorrected in spite of his efforts.

On January 27, 2004, more than one year after being served with Detainer I, Defendant mailed a hand-written document styled "Demand for Speedy Trial" to the United States District Court in Albuquerque and copied it to the "United States District Attorney" in Albuquerque.  Defendant failed to provide a copy of the demand to the warden at the Lea County facility in accordance with the procedural requirements of the IADA.  The Assistant United States Attorney assigned to this case

in fact received that document, but it was never filed in the District Court.[1]  Subsequent to Defendant's mailing, and doubtless as a result of it, on March 26, 2004, Defendant was presented with a second detainer ("Detainer II") which was of the correct type, lodged against a sentenced prisoner, based on the same charges.  Defendant received Detainer II while languishing under Detainer I in the Lea County facility.  On March 26, 2004, Defendant again asserted his right to speedy trial by properly returning the request form provided for that purpose in Detainer II.

Defendant presently requests dismissal with prejudice of the indictment as remedy for violation of the 180-day time requirement to bring him to trial as calculated from Defendant's good faith request of January 27, 2004, made in response to Detainer I.  Under Defendant's calculation, the time expired on or about July 29, 2004.  The government requests that the time within which to bring Defendant to trial be calculated from Defendant's March 26, 2004 request, made in response to Detainer II.  The government's calculation would bring the commencement of trial deadline to September 26, 2004 and beyond as a result of applicable tolling.  In the alternative, the government urges the Court to dismiss the indictment without prejudice.

## II.    Discussion

### A.    *Violation of the IADA*

The IADA mandates that a defendant be brought to trial within 180 days of a detainer being lodged.  18 U.S.C. App. Section 2, Art. III(a).  Specifically, the relevant part of the IADA states:

---

[1]The case number referenced in Defendant's document was the magistrate criminal number Defendant found on Detainer I and it did not correspond to the case number that, unbeknownst to Defendant, had been assigned to his case when he was indicted on January 9, 2002 (*Doc. 2*). Presumably, this accounts for the lack of filing in, despite delivery to, the District Court.  In any event, the Court believes Defendant mailed the letter to the District Court and recognizes that notice to a district court has been held sufficient to perfect a speedy trial demand.  *Fex v. Michigan*, 507 U.S. 43 (1993).

(a)     Whenever a person has entered upon a term of imprisonment in
        a penal or correctional institution of a party State, and whenever
        during the continuance of the term of imprisonment there is
        pending in any other party State any untried indictment, information,
        or complaint on the basis of which a detainer has been lodged
        against a prisoner, *he should be brought to trial within one hundred
        and eighty days after he shall have caused to be delivered to the
        prosecuting officer and the appropriate court of the prosecuting
        officer's jurisdiction written notice of the place of his imprisonment
        and his request for final disposition to be made of the indictment,
        information, or complaint....*

18 U.S.C. App. Section 2, Art. III(a) (emphasis added).  The 180- day period is calculated from the

time the request for speedy trial is delivered to the court and the prosecutor in the jurisdiction that

lodged the detainer.  *Fex v. Michigan*, 507 U.S. 43 (1993).

It goes undisputed that Defendant did not wholly comply with the requirements of the IADA

with his first request, as the hand-written document was (1) not served on the warden, and (2) never

filed with the District Court Clerk.  The relevant question at this juncture is whether Defendant's

imperfect compliance with the procedural requirements of the ADEA nullifies his first request for

speedy trial.  For the reasons discussed briefly below, the Court finds it does not.

First, when making his initial request for speedy resolution of the charges against him-- more

than one year after first detainer was lodged--Defendant lacked the benefit of the request form

intended to guide and instruct him through that process.  In fact, the detainer Defendant originally

received informed him only that he had *no right* to make such a request.  It would be fundamentally

unfair to hold Defendant responsible for being uninformed in the procedure when his ignorance was

a function of the government's failure, through its agent the U.S. Marshal who lodged the wrong

detainer, to provide Defendant with the information necessary to make a procedurally conforming

request.

4

The government also asserts that Defendant's failure to act on Detainer I for more than one year somehow bears on the timeliness of this Motion. This argument is unavailing, for it apparently took that length of time for Defendant to discover he had any such right under the IADA. The government further contends the Motion is untimely as premature, for the time to bring Defendant to trial has not expired by its calculation. Again, the Court disagrees with the government's position from its premise.

The IADA's purposes are to encourage the expeditious and orderly disposition of outstanding charges, to determine the proper status of detainers, and to establish cooperative procedures for the attainment of those goals. 18 U.S.C. App. Section 2, Art. I. Courts have held that strict adherence to the procedural requirements imposed upon a defendant under the IADA should be liberally construed to effectuate its purpose. *Schofs v. Warden*, 509 F. Supp. 74 (E.D. Ken. 1981). In fact, where an imperfect request for speedy disposition follows imperfect notice of the right to make such request under the IADA, dismissal has been the remedy. *See, e.g., United States v. Reed*, 910 F.2d 621 (9th Cir 1990) (dismissal was remedy for a prisoner, having received imperfect notice of a federal detainer and his right to request speedy trial, who made an imperfect request for a speedy trial which the government failed to honor); *United States v. Zafty*, 44 F. Supp. 2d at 588, 589 (court dismissed indictment with prejudice when prisoner, who received no notice of his right to request speedy trial but nonetheless made written request to be "arraigned as soon as possible," was not brought to trial within 180 days of his request).

A detainer has consequences beyond preventing officials having custody of a prisoner from releasing him until the authorities requesting the detainer have had an opportunity to try him. A detainer can cause the prisoner anxiety and concern and can deprive him of the ability to participate

in certain programs, inhibit rehabilitation, and otherwise affect conditions of his confinement and eligibility for parole. *Id.* (citing *Smith v. Hooey*, 393 U.S. 374 (1969); *Trigg v. Mosely*, 433 F.2d 364 (10th Cir. 1970)). The Court notes that a primary purpose of the IADA is to protect prisoners against whom detainers are outstanding. *Cuyler v. Adams*, 449 U.S. 433 (1981).

In *Schofs*, the petitioner was held in federal custody when he was informed of a pending detainer in Connecticut state court. *Schofs v. Warden*, 509 F. Supp. 74. The defendant wrote directly to the court clerk and state's attorney requesting a speedy trial and followed that initial request with two others, one specifically referring to the IADA. The defendant did not provide the warden with the request. The *Schofs* court held that despite procedural defects in the defendant's requests for final disposition, his writings satisfied the requirements of the IADA. *Id.* Like the petitioner in *Schofs,* Defendant in the instant case was denied, through no fault of his own, the forms necessary to initiate a request for final disposition pursuant to the IAD. So, too, this Court finds that Defendant's communications of January 27, 2003 were sufficient to perfect a request for speedy trial under the IADA. Thus, the government violated the IADA by failing to bring Defendant to trial on or before July 29, 2004.

B.    *Dismissal Remedy Under the IADA*

Defendant asks the Court to remedy the IADA violation by dismissing the indictment with prejudice, pursuant to Article V(c) which provides that if an indictment is not brought to trial within the period provided in Article III, the cause should be dismissed with prejudice. The government, on the other hand, urges application of the exception to a "with prejudice" dismissal. Article IX, Section 9 of the IADA states, in pertinent part:

Notwithstanding any provision of the agreement on detainers to

> the contrary, in a case *in which the United States is a receiving state* - (1) any order of a court dismissing any indictment, information or complaint may be with or without prejudice.  In determining whether to dismiss the case with or without prejudice, the court shall consider, among others each of the following factors:  *the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of justice...*"

18 U.S.C. App. 2, Art. IX, Section 9 (emphasis added).  In this case, the United States is the receiving state.  Thus, dismissal without prejudice is an available remedy for this Article III violation, notwithstanding dismissal with prejudice as prescribed in V(c).  A decision whether to dismiss without prejudice is subject to application of the three factors in Art. IX, Section 9, *Supra*.

### Seriousness of the offense

The first factor for the Court to consider is the seriousness of the offense.  Defendant is charged with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and Possession of an Unregistered Firearm in violation of 26 U.S.C. § 5861(d) and § 5871.  The government advises the Court that "Defendant is facing a base offense level of 22 since he has at least one 'crime of violence' in his background.  This is a zone D offense under the United States Sentencing Guidelines, which by all accounts is considered a serious offense under federal law."  Supp. Resp. at 4.  The Court notes that the charges are serious.

### Circumstances leading to dismissal

The second factor for the Court's consideration is the circumstances leading to the dismissal.  Here, the Court will not reiterate all it has discussed above, except to say  it was through no fault of Defendant and entirely an error attributable to the government that Defendant's right to speedy trial on these charges was violated.  Adding additional weight to Defendant's position here are several

things the Court learned at the December hearing.  First, Defendant had been teaching a substance abuse program at Los Lunas when he was transferred to Lea County as a result of Detainer I. Defendant also lost access to the library and fell out of contact with his family as a result of the transfer.  In addition, it came to light in the hearing that the Marshal who lodged the incorrect detainer in this case operated under the gross misapprehension that  "sentenced prisoner" for purposes of a detainer on federal charges refers solely to prisoners already sentenced to a federal prison.  It is an understatement to say that any such fallacy is in dire need of correction.

From the government on this factor, the Court hears only a stale argument reiterating that the dates associated with Detainer II should apply.  Yet, that question is no longer at issue.  If it were, the Court would not now be weighing factors to determine which type of dismissal is an appropriate remedy for the established violation.

### Impact of re-prosecution on the IADA

Finally, the Court must determine what impact a dismissal without prejudice would have on the IADA and on the administration of justice.  At the outset, it is difficult to imagine how such a "remedy"  would ever ameliorate the violation of one's rights under the speedy trial provision. Instead, it would serve only to further lengthen the time a defendant awaits final disposition of the charges against him.  This would operate in direct contravention of the speedy trial provision, which has as a primary purpose preventing defendants from languishing under detainers.

By contrast, the Court hears no particularly convincing argument from the government from which it might weight this factor in its favor.  The government asserts its belief that justice will be well-served only if Defendant is tried on these weapons charges, for Defendant has a history of crimes involving violence and stolen property.  The Court could not agree more that justice would be served

8

by requiring this Defendant to answer these firearms charges at trial.  However, Congress enacted the IADA in large part to prevent the precise situation the Court is faced with here.  Given all the circumstances leading up to this dismissal, the Court finds this third factor weighs heavily in favor of dismissal with prejudice.

## III.   Conclusion

In summary, the Court finds that the government violated the Interstate Agreement on Detainers Act when, as the result of its lodging an improper detainer through its agent the United States Marshal, it failed to bring Defendant to trial within 180 days of Defendant's request pursuant to that detainer.  The Court further finds that the factors found at 18 U.S.C. App. 2, Art. IX, Section 9 weigh in favor of dismissal with prejudice on the particular facts of this case.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment, filed September 8, 2004 (*Doc. 13*), is granted and this case is hereby dismissed with prejudice.

DATED December 20, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Roberto D. Ortega, AUSA

Counsel for Defendant:

Richard A Winterbottom, AFPD

9